PRUITT v. FROST–JOHNSON LUMBER
CO. OF TEXAS.

(Court of Civil Appeals of Texas. Texarkana.
Nov. 20, 1913.)

1. MASTER AND SERVANT (§ 103*)—MASTER'S LIABILITY—SERVANT'S KNOWLEDGE OF DEFECT—TOOLS AND APPLIANCES.

Where plaintiff, a foreman's helper in a planing mill, with the duty of keeping the machines adjusted and repaired, knew that a jam nut was defective and a wrench slipped from it, in consequence of which he was injured, defendant's liability could not have been predicated on the defect in the nut.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 175; Dec. Dig. § 103.*]

2. MASTER AND SERVANT (§ 233*)—MASTER'S LIABILITY—TOOLS AND APPLIANCES.

Where a master furnished a servant wrenches free from defects and reasonably safe for use in repairing machines in a planing mill, and the servant, instead of using one of them, chose and used a defective wrench, the master discharged his duty to use reasonable care to provide a reasonably safe wrench.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 681, 684–686, 701–742; Dec. Dig. § 233.*]

3. MASTER AND SERVANT (§ 217*)—MASTER'S LIABILITY—ASSUMPTION OF RISK.

A servant who knew and appreciated the danger involved in the use of a wrench so defective as to slip, while he was endeavoring to loosen a nut, yet who chose such a wrench when he might have chosen one without defect and which would not have slipped, assumed the risk of injury from the defect.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

Appeal from District Court, Nacogdoches County; Jno. I. Perkins, Judge.

Action by J. A. Pruitt against Frost-Johnson Lumber Company of Texas. Judgment for defendant, and plaintiff appeals. Affirmed.

King & King, of Nacogdoches, for appellant. Blount & Strong, of Nacogdoches, for appellee.

WILLSON, C. J. Lee Johnson had charge of the operation of appellee's planing mill near Nacogdoches. Appellant was Johnson's "helper." In his petition appellant alleged it was his duty, as such helper, to assist Johnson in the work of keeping the several planing machines adjusted and repaired. January 24, 1912, while appellant was at-

tempting, with a wrench, to adjust one of said machines, as a result of a failure of the wrench to hold on a jam nut it became necessary to turn, apppellant's right hand and a portion of his right forearm were thrown against knives revolving in the machine, and he was injured. In his petition he alleged as negligence on the part of appellee, which entitled him to the damages he sought to recover, (1) that the wrench "was old and worn and out of adjustment by wear and tear, so that it would not fit tightly around said nut, the mouth of said wrench being so worn as to become too wide to hold closely upon said nut when placed thereupon, and so worn that when the plaintiff attempted to use the same upon the nut the wrench refused to catch or hold the nut and slipped from around the same, which said defect in said wrench was unknown to him, but was known to defendant or its foreman (said Johnson), or could have been known to them by the exercise of proper care in the examination and inspection of said wrench, which said duty the plaintiff charges the defendant had negligently refused to perform"; and (2) that the jam nut had "become corroded, worn, and covered with resin, so as to make it difficult for the wrench furnished to hold upon said nut, and said condition permitted the wrench in its worn and defective state, when placed upon said nut for the purpose of moving the same, thereby to slip from off said nut, thereby throwing his hand into said machine as aforesaid, which said fact was unknown to this plaintiff, but which said fact was known to the defendant, or could have been known in the exercise of the duty of examination and inspection imposed upon it by law, which said examination and inspection this plaintiff charges the defendant carelessly and negligently failed to perform."

The court below, after hearing the testimony, told the jury same did not warrant a verdict in appellant's favor, and instructed them to find for appellee. The jury so found. The appeal is from a judgment in accordance with their finding. The complaint here is that the court erred in peremptorily instructing the jury as stated.

At the time he was injured appellant was 46 years old. He had worked in planing mills during more than 20 years of his life, and during the 4 or 5 years immediately preceding the time when he was injured had worked in appellee's mill as "helper" to the foreman in charge thereof. It was a part of appellant's duty to adjust the machines, and if he found a jam nut in a bad condition to put in a new one, and if he found a wrench to be in a bad condition to either have it repaired or make a report as to its condition to the foreman. He had frequently adjusted the machine in question. The jam nut was defective in that, as appellant testified, it was "worn on the end." Appellant knew it was so worn before he attempted to turn it on the occasion when he was injured. The

wrench is described in the record as "a 34 wrench, an open set wrench at both ends." The defect in it, appellant testified, was that it "was spread at the mouth—it was spread about $1/16$ of an inch or a little better." It was one of several wrenches furnished by appellee for use in turning the nut. Appellant knew that some of the wrenches were defective and that others of them were not defective. "I knew," he testified, "that there were wrenches there that were in bad shape and wrenches that were in good shape." He made no examination before using the wrench to see if it was one of the defective ones or not. "When," he testified, "I went down to that machine and went to work and found this wrench on the machine, I went immediately to using it. I never made any examination of it. I made no examination of it at all." Both the wrench and the nut were exhibited to the court and jury, and, it seems, admitted in evidence, though they were not sent to this court. Lee Johnson, the foreman, testified that the wrench "if properly put on the jam nut will not slip off." This was not denied by appellant. He testified that he "could not get a good hold on the nut" because of its being close to the wall of the machine, and he did not know what kind of a hold he had on it when the wrench slipped. Appellant knew the danger he incurred in attempting as he did to turn the nut while the machine was in operation. "Those knives," he said, referring to the ones with which his hand and arm came in contact when the wrench slipped, "are revolving knives. The knives are in the open where you can see them when the hood is off. The jam nut and set screw are about 6 inches, I guess, from those knives. In putting the wrench on the jam nut to loosen it, if you would turn it, your hand would go in towards the knives. My hand on the wrench to turn the jam nut would be approximately 8 or 10 inches from the knives. On that day when I pushed the wrench, I was pushing my hand directly towards the knives."

We think the testimony referred to suggests sufficient reasons why the judgment should not be disturbed.

[1] Negligence on the part of appellee, of which appellant had a right to complain, could not have been predicated on the defect in the jam nut, because, as he testified, he knew it was defective, and because, as he further testified, it was his duty, knowing it was defective, to replace the nut with a new one. Therefore negligence, if there was any on appellee's part, must have been predicated on the defect in the wrench.

[2] It conclusively appeared that appellee had furnished appellant wrenches free of defects and reasonably safe for use in doing the work he was engaged in doing, and that appellant, instead of using one of them, chose and used the one in question. It would

seem that appellee, having furnished such wrenches, had discharged the duty it owed to appellant to use reasonable care to provide for his use in turning the jam nut a wrench reasonably safe for the purpose, and that, if it violated a duty it owed to him, it was one he did not rely upon as a ground for the recovery sought—that is, either to separate and remove the defective wrenches from those not defective, or to instruct him how to distinguish between them. Had negligence in this respect been alleged, a sufficient answer to the charge, perhaps, would have appeared in testimony showing the wrenches to have been simple tools, with the use of which appellant was entirely familiar, and defects in which he should have discovered.

[3] There is another view to be taken of the testimony, which, it seems to us, justified the course pursued by the court, and that is that it conclusively appeared that appellant was in the attitude of having assumed the risk he incurred in using the defective wrench. He knew and fully appreciated the danger involved in the use of a wrench so defective as to slip while he was endeavoring to loosen the nut, yet he chose such a wrench when he might have chosen one without defects which would not have so slipped.

We think the court did not err as claimed. Therefore the judgment is affirmed.